UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Bank of America, N.A., | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:13-cv-0463-GMN-CWH |
| vs. | ) |
| | ) **ORDER** |
| Victor Hecker, R. Phil Zobrist, and Janet Zobrist, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pending before the Court is the Motion for Summary Judgment filed by Plaintiff Bank of America, N.A. ("BANA"). (ECF No. 37). *Pro se* Defendants Victor Hecker, R. Phil Zobrist, and Janet Zobrist responded in opposition, (ECF No. 38),[1] and BANA replied, (ECF No. 39).

I.  **BACKGROUND**

This case centers upon BANA's claims that Defendants breached a settlement agreement reached in a prior case, and that BANA is thereby excused from performing pursuant to that agreement. (Compl., ECF No. 1).

Defendants R. Phil Zobrist and Janet Zobrist (the "Zobrists") are the owners of real property located at 8593 Verde Park Circle, Las Vegas, NV 89129 (the "Property"). (Grant, Bargain, Sale Deed, ECF No. 37-5). On May 16, 2008, the Zobrists took out a $1,500,000 loan from BANA (the "Loan"), which was secured by a deed of trust upon the Property. (Deed of Trust, ECF No. 37-6).

On April 1, 2009, the Zobrists defaulted upon the Loan, and BANA subsequently filed a notice of default and election to sell in the Clark County Recorder's office on August 25, 2009.

---

[1] In light of Defendants' status as *pro se* litigants, the Court has liberally construed their filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

(Notice of Default, ECF No. 37-7). On March 3, 2010, the Zobrists and Defendant Victor Hecker filed suit against BANA in Clark County District Court (the "Clark County Case"), setting forth claims for, *inter alia*, civil conspiracy and defamation based on allegations that BANA had reneged on a promise to allow Hecker to assume the Loan from the Zobrists. The parties in that case agreed to a settlement (the "Settlement Agreement") on June 5, 2012, which provided that all the claims against BANA would be withdrawn and Defendant Hecker would purchase the Property through a short sale at a price to be determined by an independent appraiser. (Settlement Agmt. ¶¶ 8, 10, ECF No. 37-13). In exchange, BANA agreed that it would not seek a deficiency judgment following the short sale, and stated that it would change its reporting status regarding the Zobrists' debt from "in default" to "settled/other" after the short sale closed. (*Id.* ¶¶ 15, 18). Pursuant to a stipulation by the parties, the Clark County Case was closed on July 15, 2012. (Closure Order, ECF No. 37-14). On October 1, 2012, BANA's agents formally signed the written Settlement Agreement. (Settlement Agmt. p. 9).

Pursuant to the Settlement Agreement, Defendant Hecker was responsible for obtaining financing for the short sale. (*Id.* ¶ 11). The Settlement Agreement provided that BANA would be entitled to foreclose upon the Property if escrow on the short sale, through no fault of BANA, failed to close by December 5, 2012. (*Id.* ¶ 13).

The appraisal upon the Property was conducted on August 6, 2012. (Appraisal Report p. 6, ECF No. 37-15). Despite approaching numerous financial institutions, Defendant Hecker was unable to secure financing for the short sale by the deadline. Upon Defendants' request, BANA subsequently extended the deadline for Defendants to finalize the short sale to March 6, 2013. (Feb. 20, 2013 Email, Ex. 2 to Defs.' Resp.). However, Defendant Hecker was unable to finalize the short sale by that date, and BANA subsequently filed its Complaint in the instant case on March 18, 2013, raising claims for breach of contract and declaratory relief. On April 16, 2013, Defendants filed an Answer which set forth counterclaims against BANA for breach

1  of contract and breach of the covenant of good faith and fair dealing. (ECF No. 12).

2      In the instant Motion, BANA claims that it is entitled to summary judgment as to its
3  claims as well as Defendants' counterclaims, and requests that the Court declare that BANA is
4  excused from further performance under the Settlement Agreement. (Pl.'s Mot. 2:13-17).

## II.  LEGAL STANDARD

6      The Federal Rules of Civil Procedure provide for summary adjudication when the
7  pleadings, depositions, answers to interrogatories, and admissions on file, together with the
8  affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant
9  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that
10  may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
11  (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable
12  jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if
13  reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict
14  in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th
15  Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999)).  A
16  principal purpose of summary judgment is "to isolate and dispose of factually unsupported
17  claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

18      In determining summary judgment, a court applies a burden-shifting analysis.  "When
19  the party moving for summary judgment would bear the burden of proof at trial, it must come
20  forward with evidence which would entitle it to a directed verdict if the evidence went
21  uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing
22  the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*
23  *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In
24  contrast, when the nonmoving party bears the burden of proving the claim or defense, the
25  moving party can meet its burden in two ways: (1) by presenting evidence to negate an

essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249-50.

III.   **DISCUSSION**

"Because a settlement agreement is a contract, its construction and enforcement are governed by principles of contract law." *May v. Anderson*, 119 P.3d 1254, 1257 (2005). It is

well established that, "A material breach by one party to a contract may excuse further performance by another party to the contract." *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1193 (D. Nev. 2006) *aff'd*, 583 F.3d 1232 (9th Cir. 2009) (citing *Young Elec. Sign Co. v. Fohrman,* 466 P.2d 846, 847 (Nev. 1970)).

Defendants do not dispute that they failed to finalize the short sale by the deadline provided in the Settlement Agreement. Instead, they argue that their conduct did not constitute a breach of the Settlement Agreement, because they would have been able to timely finalize the short sale if not for BANA's "delays, interference, and lack of cooperation." (Defs.' Resp. 2:18-22).

However, Defendants have failed to produce any evidence to support this contention. Indeed, the evidence on the record demonstrates that BANA accommodated Defendants by granting them an additional three months to obtain financing for the short sale, (Feb. 20, 2013 Email, Ex. 2 to Defs.' Resp.), and Defendant Hecker was nevertheless unable to qualify for financing within that extended time span due to numerous problems with the Property's title. (March 5, 2013 Letter, Ex. 15 to Pl.'s Mot. p. 41, ECF No. 37-15).[2]

Therefore, the evidence on the record demonstrates that Defendants breached the Settlement Agreement by failing to complete the short sale by the deadline. Defendants do not dispute that this constituted a material breach, and thus the Court finds that BANA is excused from further performance. *See, e.g.*, *Crockett & Myers, Ltd.*, 440 F. Supp. 2d at 1193. Accordingly, BANA's Motion for Summary Judgment will be granted.

---

[2] The Court notes that it took seventy-eight days following the dismissal of the Clark County Case for BANA's agents to sign the written Settlement Agreement. (Settlement Agmt. p. 9). However, it is also apparent that BANA acted in accordance with the terms of the Settlement Agreement prior signing it, as BANA facilitated the appraisal that was conducted less than a month after the Clark County Case was dismissed. (Appraisal Report p. 6, ECF No. 37-15). Furthermore, Defendants have not presented any evidence demonstrating that Defendant Hecker's failure to secure financing was related to the timeline in which BANA signed the written Settlement Agreement.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that BANA's Motion for Summary Judgment, (ECF No. 37), is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment shall be entered in BANA's favor as to the claims set forth in the Complaint as well as Defendants' counterclaims.

**IT IS FURTHER ORDERED** that the judgment reflect the Court's declaring that Plaintiff Bank of America, N.A. is excused from further performance under the settlement agreement at issue in this action.

**IT IS FURTHER ORDERED** that the notice of pendency of action filed and recorded by or on behalf of Defendants upon the real property located at 8593 Verde Park Circle, Las Vegas, Nevada 89129 (APN # 138-05-613-019) with the Clark County Recorder's Office as instrument number 201005240004814 is hereby cancelled and expunged.

**IT IS FURTHER ORDERED** that Defendants shall record a copy of this Order with the Clark County Recorder's Office within fourteen (14) days of its issuance.

The Clerk is instructed to close the case.

**DATED** this 23rd day of September, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge